# Exhibit A

## DECLARATION OF EDWARD A. SALANGA
## IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

1.      I am a partner in the firm of Quarles & Brady, LLP, counsel for defendants David Franke, Stephanie Franke, James Staudohar, Kathleen Staudohar, Scott Wiley, and Gail Wiley in this matter. I make this statement in support of Defendants' Notice of Removal.

2.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon defendants in the State Court Action are being submitted with this Notice of Removal, and are attached hereto.

3.      I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 11, 2016.

_____
                                    Edward A. Salanga

QB\41921388.1

**In the Superior Court of the State of Arizona**
**In and For the County of** Maricopa

# CV2016-013272

MICHAEL K. JEANES, CLERK
BY
T. SHEPARDSON, FILED
16 AUG 23 PM 4:29

Is Interpreter Needed? ☐ Yes ☒ No
If yes, what language:

(Please Type or Print)

Plaintiff's Attorney  Andrew S. Friedman

Attorney Bar Number  005425

Plaintiff's Name(s): (List all)  Plaintiff's Address:          Phone #:        Email Address:
BILL McCAULEY  c/o Andrew Friedman, 2325 E. Camelback Rd, #300, Phoenix, 85016; 602-274-1100; afriedman@bffb.com

EDWARD D. KENDLER, TRUSTEE OF KENDLER FAMILY TRUST  (same as above)

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)  JAHM J. NAJAFI and CHERYL NAJAFI; KEVIN M. WEISS and ELIZABETH S. WEISS;
DAVID P. FRANKE and STEPHANIE M. RANKIN FRANKE; JAMES D. STAUDOHAR and KATHLEEN M. STAUDOHAR;  (cont.)
(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT:  ☐ Temporary Restraining Order  ☐ Provisional Remedy  ☐ OSC

☐ Election Challenge  ☐ Employer Sanction  ☐ Other _____
                                    (Specify)

☒ RULE 8(i) COMPLEX LITIGATION APPLIES. Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.

(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category.)

☒ THIS CASE IS ELIGIBLE FOR THE COMMERCIAL COURT UNDER EXPERIMENTAL RULE 8.1. (Maricopa County only.) Rule 8.1 defines a commercial case and establishes eligibility criteria for the commercial court. Generally, a commercial case primarily involves issues arising from a business contract or business transaction. However, consumer transactions are not eligible. A consumer transaction is one that is primarily for personal, family or household purposes. **Please review Rule 8.1 for a complete list of the criteria.** See http://www.superiorcourt.maricopa.gov/commercial-court/. You must check this box if this is an eligible commercial case. **In addition, mark the appropriate box below in the "Nature of Action" case category.** The words "commercial court assignment requested" must appear in the caption of the original complaint.

## NATURE OF ACTION

(Place an "X" next to the <u>one</u> case category that most accurately describes your primary case.)

<u>100 TORT MOTOR VEHICLE:</u>
☐101 Non-Death/Personal Injury
☐102 Property Damage
☐103 Wrongful Death

<u>110 TORT NON-MOTOR VEHICLE:</u>
☐111 Negligence
☐112 Product Liability – Asbestos
☐112 Product Liability – Tobacco
☐112 Product Liability – Toxic/Other
☐113 Intentional Tort

☐114 Property Damage
☐115 Legal Malpractice
☐115 Malpractice – Other professional
☐117 Premises Liability
☐118 Slander/Libel/Defamation
☐116 Other (Specify) _____

<u>120 MEDICAL MALPRACTICE:</u>
☐121 Physician M.D.  ☐123 Hospital
☐122 Physician D.O  ☐124 Other

Case No._____

## 130 CONTRACTS:

- ☐ 131 Account (Open or Stated)
- ☐ 132 Promissory Note
- ☐ 133 Foreclosure
- ☐ 138 Buyer-Plaintiff
- ☒ 139 Fraud
- ☐ 134 Other Contract (i.e. Breach of Contract)
- ☐ 135 Excess Proceeds-Sale
- ☐ Construction Defects (Residential/Commercial)
  - ☐ 136 Six to Nineteen Structures
  - ☐ 137 Twenty or More Structures

## 150-199 OTHER CIVIL CASE TYPES:

- ☐ 156 Eminent Domain/Condemnation
- ☐ 151 Eviction Actions (Forcible and Special Detainers)
- ☐ 152 Change of Name
- ☐ 153 Transcript of Judgment
- ☐ 154 Foreign Judgment
- ☐ 158 Quiet Title
- ☐ 160 Forfeiture
- ☐ 175 Election Challenge
- ☐ 179 NCC-Employer Sanction Action
  (A.R.S. §23-212)
- ☐ 180 Injunction against Workplace Harassment
- ☐ 181 Injunction against Harassment
- ☐ 182 Civil Penalty
- ☐ 186 Water Rights (Not General Stream Adjudication)
- ☐ 187 Real Property
- ☐ Special Action against Lower Courts
  (See lower court appeal cover sheet in Maricopa)

- ☐ 194 Immigration Enforcement Challenge
  (§§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

- ☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)
- ☐ 150 Tax Appeal
  (All other tax matters must be filed in the AZ Tax Court)
- ☐ 155 Declaratory Judgment
- ☐ 157 Habeas Corpus
- ☐ 184 Landlord Tenant Dispute- Other
- ☐ 190 Declaration of Factual Innocence
  (A.R.S. §12-771)
- ☐ 191 Declaration of Factual Improper Party Status
- ☐ 193 Vulnerable Adult (A.R.S. §46-451)
- ☐ 165 Tribal Judgment
- ☐ 167 Structured Settlement (A.R.S. §12-2901)
- ☐ 169 Attorney Conservatorships (State Bar)
- ☐ 170 Unauthorized Practice of Law (State Bar)
- ☐ 171 Out-of-State Deposition for Foreign Jurisdiction
- ☐ 172 Secure Attendance of Prisoner
- ☐ 173 Assurance of Discontinuance
- ☐ 174 In-State Deposition for Foreign Jurisdiction
- ☐ 176 Eminent Domain– Light Rail Only
- ☐ 177 Interpleader– Automobile Only
- ☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- ☐ 183 Employment Dispute- Discrimination
- ☐ 185 Employment Dispute-Other
- ☐ 195(a) Amendment of Marriage License
- ☐ 195(b) Amendment of Birth Certificate
- ☐ 163 Other _____
  (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- ☐ Antitrust/Trade Regulation
- ☐ Construction Defect with many parties or structures
- ☐ Mass Tort
- ☒ Securities Litigation with many parties
- ☐ Environmental Toxic Tort with many parties
- ☒ Class Action Claims
- ☐ Insurance Coverage Claims arising from the above-listed case types
- ☐ A Complex Case as defined by Rule 8(i) ARCP

**Additional Plaintiff(s)**

_____
_____

**Additional Defendant(s)**

SCOTT WILEY and GAIL E. WILEY
_____

FILED 4:30pm

AUG 2 3 2016

MICHAEL K. JEANES, Clerk
By _Shepardson_
T. Shepardson, Deputy

PAID
$ 319.00
R# 2643582?

| 1 | Andrew S. Friedman (State Bar No. 005425) |

Andrew S. Friedman (State Bar No. 005425)
afriedman@bffb.com
**BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone:  (602) 274-1100
Facsimile:  (602) 274-1199

*Attorneys for Plaintiffs*

# SUPERIOR COURT OF ARIZONA

## MARICOPA COUNTY

| | |
|---|---|
| BILL McCAULEY and EDWARD D. KENDLER, sole trustee of the KENDLER FAMILY TRUST, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>vs.<br><br>JAHM J. NAJAFI and CHERYL NAJAFI, husband and wife; KEVIN M. WEISS and ELIZABETH S. WEISS, husband and wife; DAVID P. FRANKE and STEPHANIE M. RANKIN FRANKE, husband and wife; JAMES D. STAUDOHAR and KATHLEEN M. STAUDOHAR, husband and wife; SCOTT WILEY and GAIL E. WILEY, husband and wife,<br><br>             Defendants. | Case No. CV2016-013272<br><br>**COMPLAINT**<br><br>*Jury Trial Demanded*<br><br>(Commercial Court Assignment Requested) |

**Introduction**

1.      Plaintiffs Bill McCauley and Edward D. Kendler (Plaintiffs) bring this action for violations of the Arizona Securities Act on behalf of themselves individually and a class of other similarly situated persons who purchased the publicly traded stock of Xhibit Corp. (Xhibit) between May 16, 2013 and September 10, 2014 (the Proposed Class Period).[1]

2.      Xhibit and Defendants Najafi, Weiss, Franke, and Staudohar orchestrated a fraudulent or deceitful transaction, practice, and course of business in connection with a May 16, 2013 merger transaction between Xhibit and SkyMall[2] (the Merger). Through the Merger scheme, Xhibit and Defendants created a materially fraudulent and deceptive public market for SkyMall—an insolvent, previously private company with a history of operating losses.

3.      Xhibit and Defendants Najafi, Weiss, Franke, and Staudohar made no disclosure of SkyMall's dire financial condition at the time of the Merger, concealing its financial statements while deceptively attributing a value to SkyMall of over $25 million.

4.      When the Merger was announced on May 17, 2013, Defendant Najafi publicly represented in a PR Newswire press release that the Merger would strengthen Xhibit and position it for continued growth:

> Xhibit is a leading marketer and their industry expertise will give SkyMall a strong competitive advantage.  This merger positions the combined company properly for continued growth both domestically and internationally.

Similarly, Defendant Weiss represented in the same press release:

> SkyMall and Xhibit are a perfect match of innovation, marketing and technology.  This merger enables SkyMall with significant opportunities to create heightened value for our partners and customers.  With the help of Xhibit's team, we look forward to expanding our industry-leading platforms around the world.

---

[1] Xhibit shares are not covered securities traded on a national securities exchange within the meaning of 15 U.S.C.A. § 77p(f)(3).

[2] "SkyMall" and "the SkyMall Companies" means, collectively, SkyMall, LLC and SkyMall Ventures, LLC and their corporate predecessors SkyMall Holdings Corporation, SkyMall, Inc. and SkyMall Ventures, Inc.

5.     These statements concealed the true purpose of the Merger.  In reality, Najafi intended from the start to use the Merger as the platform for a scheme to pay debt to his affiliates by taking SkyMall public and selling off the loyalty segment of the business, which was SkyMall's only profitable business line.  Thus, the Merger was a deceptive transaction and practice that furthered Najafi's financial interests while operating as a fraud on Plaintiffs and other public investors.

6.     Xhibit and Defendants Najafi, Weiss, Franke, Staudohar, and Wiley thereafter perpetuated the scheme by deceptively inflating the value of Xhibit after the Merger, specifically through SEC filings described below, overstating Xhibit's assets and net worth by tens millions of dollars and deceptively understating Xhibit's operating expenses by hundreds of millions of dollars, while delaying disclosure of the truth until after Xhibit's loyalty business was sold off and Najafi's affiliated companies were paid.

7.     Najafi completed the scheme with the sale of Xhibit's loyalty segment on September 9, 2014.  After that, Xhibit had no profitable business lines.  Over 60% of the sale proceeds were used to pay debt to Najafi affiliates.  Xhibit was forced to file bankruptcy four months later.

8.     After written inquiries by the Securities and Exchange Commission (SEC), Xhibit's Audit Committee formed a Special Investigative Committee to investigate the facts surrounding the Merger. The Special Investigative Committee retained the Jones Day law firm to assist it in conducting the investigation.

9.     As a result of the investigation conducted by the Special Investigative Committee and Jones Day, Defendants were ultimately forced to acknowledge the deceptive nature of the Merger by taking an impairment charge of over $137 million. Xhibit and Defendants did not reveal the need for this massive restatement, however, until they filed an overdue 2013 SEC Form 10-K on September 10, 2014, effectively admitting therein that, between the date of the Merger and the corrective disclosure of September 10, 2014 (that is, the Proposed Class Period), Xhibit's reported assets and net worth had been overstated by tens of millions of dollars and its operating expenses had been

understated by hundreds of millions of dollars.

10. On October 21, 2014, Xhibit in its SEC Form 10-Q revealed that the SEC's Division of Enforcement notified Xhibit that it was investigating the Merger and related events. The investigation includes Defendant Najafi's role in inducing the Merger and his subsequent sale of Xhibit securities to reap personal profits, including his activities as a controlling person and director of Xhibit.

11. On January 22, 2015, Xhibit filed for bankruptcy, effectively rendering Xhibit's stock worthless.

12. Plaintiffs accordingly bring this action seeking rescission or rescissionary damages on behalf of themselves and on behalf of a putative class of similarly situated investors (the Proposed Class) who bought Xhibit stock during the Proposed Class Period.

**Jurisdiction and Parties**

**A.    Jurisdiction**

13. The Court has subject matter jurisdiction under A.R.S. § 12-123.

**B.    Venue**

14. Venue in this Court is proper under A.R.S. §12-401.

**C.    Plaintiffs**

15. Plaintiff Bill McCauley is a resident, domiciliary and citizen of Tennessee.

16. Attached as Exhibit A is a schedule showing Plaintiff McCauley's purchases and sales of Xhibit stock during the Proposed Class Period (i.e., from May 16, 2013, through September 10, 2014).

17. Plaintiff Ed Kendler is a resident, domiciliary and citizen of Arizona, and the sole trustee of the revocable trust known as the Kendler Family Trust.

18. Attached as Exhibit B is a schedule showing Plaintiff Kendler's purchases and sales of Xhibit stock during the Proposed Class Period (i.e., from May 16, 2013, through September 10, 2014).

**D.    Defendants**

19. Defendant Jahm J. Najafi (Najafi) is a resident, domiciliary, and citizen of

3

Arizona. At all material times, Najafi was married to Cheryl Najafi and acted on behalf of his marital community with his wife.

20.     Najafi was a controlling person and member of Xhibit's board of directors from June 18, 2013 to October 29, 2014.

21.     Defendant Kevin Weiss (Weiss) is a resident, domiciliary, and citizen of Arizona. At all material times, Weiss was married to Elizabeth S. Weiss and acted on behalf of his marital community with his wife.

22.     Weiss was a controlling person and member of Xhibit's board of directors from May 16, 2013 to November 13, 2014.

23.     Defendant David P. Franke (Franke) is a resident, domiciliary, and citizen of Arizona. At all material times, Franke was married to Stephanie M. Rankin Franke and acted on behalf of his marital community with his wife.

24.     Franke was a controlling person and member of Xhibit's board of directors from April 18, 2013 to 2015.

25.     Defendant James D. Staudohar (Staudohar) is a resident, domiciliary, and citizen of Arizona. At all material times, Staudohar was married to Kathleen M. Staudohar and acted on behalf of his marital community with his wife.

26.     Staudohar was a controlling person and member of Xhibit's board of directors from March 25, 2013 to February 4, 2015.  Staudohar was also a member of Xhibit's audit committee.

27.     Defendant Scott Wiley (Wiley) is a resident, domiciliary, and citizen of Arizona. At all material times, Wiley was married to Gail E. Wiley and acted on behalf of his marital community with his wife.

28.     Wiley is a CPA who was Xhibit's CFO from September 11, 2013 to November 16, 2014, when he replaced Weiss as acting CEO.  Wiley was a controlling person of Xhibit until its bankruptcy in January 2015.

**E.      Relevant Non-Parties**

29.     Xhibit was a publicly traded Nevada corporation with its primary place of

1  business in Arizona.  On or about January 22, 2015, Xhibit filed a petition for bankruptcy

2  relief under Chapter 11 of the Bankruptcy Code in matter 2:15-bk-00680-BKM (D. Ariz.).

3       30.    SkyMall LLC was a Delaware limited liability corporation with its primary

4  place of business in Arizona. On or about January 22, 2015, SkyMall LLC filed a petition

5  for bankruptcy relief under Chapter 11 of the Bankruptcy Code in matter 2:15-bk-00679-

6  BKM (D. Ariz.).

7      **F.**    **Xhibit's Arizona base of operations.**

8       31.    Throughout the Proposed Class Period Xhibit and the individual Defendants

9  used Arizona as their base of operations to induce brokers and market makers to solicit

10  investments from Plaintiffs and other public investors.

11       32.    Xhibit and the individual Defendants' Arizona-based activities include the

12  following non-ministerial acts taken in Arizona:

- Xhibit and the SkyMall Companies were all Arizona-based companies that negotiated, signed and consummated the Merger in Arizona.

- Xhibit and the SkyMall Companies each had their principal place of business and corporate headquarters in Arizona.

- Each of the Defendant officers and directors—Najafi, Weiss, Franke, Staudohar, and Wiley—conducted business, operated from, and resided in Arizona.

- Xhibit's board of directors' meetings were conducted in Arizona.

- Xhibit's SEC filings including the SEC Form 10-Ks, 10-Qs, and 8-Ks described in this Complaint were drafted, approved by Xhibit's management, and signed by Xhibit's officers in Arizona.

- Xhibit's press releases (including the May 17, 2013 press release quoted above) and other public statements regarding the Merger and post-Merger events were prepared in Arizona and emanated from Arizona.

- The Merger's closing occurred in Phoenix, Arizona.

- Except with respect to the effect of the Merger (to which Delaware law applies), the Merger agreement was governed by Arizona law.

5

- The conduct comprising the fraudulent and deceitful transactions, practices and course of business alleged herein occurred primarily within Arizona.

## Factual Allegations

### A.    Najafi's Acquisition and Control of SkyMall

33.    In 2012 SkyMall operated a specialty-retail business offering an array of merchandise from direct marketers and manufacturers through the SkyMall catalog and website (SkyMall.com), and a loyalty business as a provider of merchandise, gift cards, and experiential rewards reaching millions of loyalty-program members in corporate and other loyalty programs throughout the United States.  At the time, SkyMall was a privately owned company.

34.    As of December 31, 2011, SkyMall's audited financial statements reported assets of $44,360,115, liabilities of $73,425,396, an accumulated shareholder deficit of $29,065,281, and a net loss for FY 2011 of $17,106,411.

35.    On or about April 4, 2012, affiliated companies controlled by Najafi acquired SkyMall for approximately $10 million. As a result, Najafi gained control, directly or indirectly, of SkyMall.

36.    Najafi realized, however, that SkyMall was losing millions of dollars and could stay in business only so long as he or his affiliated companies provided credit to cover its operating losses.

37.    As of December 31, 2012, SkyMall audited financial statements reported assets of $51,109,385, liabilities of $55,943,477, an accumulated shareholder deficit of $4,834,092, and an operating loss of $1,993,194.  Notably, in SkyMall's 2012 audited financials the value attributed to SkyMall's intangible assets, tradename, and goodwill was only $9.7 million, an amount far lower than the inflated numbers later reported in Xhibit's deceptive SEC filings after the Merger.  Because SkyMall at the time was a privately owned company, its audited financial statements were neither disclosed nor available to the investing public.

38.    In short, prior to the Merger SkyMall had a history of operating losses and

shareholder deficits, and was in jeopardy as a going concern. SkyMall's ability to stay in business was made possible only by credit and related debt provided through Najafi and his affiliated companies as part of the deceptive practices, transactions, and course of business alleged herein.

**B.     Najafi Merges SkyMall with Xhibit**

39.     Xhibit operated as a cloud-based marketing and technology company focused on digital advertising, mobile and social media development, and customer relationship management solutions.

40.     In June 2012, Xhibit went public through a reverse takeover of an existing public company.

41.     Xhibit in 2012 relocated and established its corporate offices in Tempe, Arizona.

42.     On April 16, 2013, Xhibit in its SEC Form 10-K for 2012 reported a positive net worth as of December 31, 2012, of only $3.024 million.

43.     In Spring 2013, Najafi met with Xhibit's management and proposed a merger between SkyMall and Xhibit. In his discussions with Xhibit's management, Najafi described SkyMall as an asset-rich company with excess available cash that could provide liquidity for Xhibit's business segments.     Najafi presented the Merger to Xhibit's management as a way for SkyMall and Xhibit to join their businesses and mutually strengthen one another.

44.     As noted above, SkyMall actually had a negative net worth and working-capital deficit prior to the Merger.  SkyMall was able to report net income in FY 2012 only through a debt restructuring in which credit-line debt, bank fees, and other debt-related expenses totaling $11.595 million were forgiven and reported as a non-operating gain that increased income. SkyMall's audited financial statements should have included a going-concern qualification and were materially deceptive because they did not.

45.     Najafi nevertheless valued SkyMall as worth $25.5 million for purposes of the Merger (i.e., $75,358,670 less $49,858,670 in assumed liabilities = $25,500,000), even

though he knew that SkyMall in fact had a negative net worth.

46. Defendants Weiss, Franke, and Staudohar agreed with Najafi to use his $25.5 million SkyMall valuation for purposes of the Merger scheme, even though they too knew that SkyMall in fact had a negative net worth.

47. The Merger Agreement was publicly filed as part of an SEC Form 8-K filing on May 22, 2013. Although SkyMall's audited financial statements for 2011 and 2012 (and its unaudited financial statements for the first quarter of 2013) were an exhibit to the signed Merger Agreement, Defendants *omitted* the SkyMall financial statements from the copy of the Merger Agreement included in Xhibit's Form 8-K filing.[3]

48. The inflated valuation of SkyMall's net worth for purposes of the Merger was a material part of Defendants' fraudulent or deceitful transactions, practices, and course of business.

**C.    Najafi Assumes Control of Xhibit**

49. Once SkyMall merged with Xhibit in May 2013, Najafi became the beneficial owner of a majority of Xhibit shares.

50. On May 16, 2013, Najafi selected his associate Weiss, who was formerly SkyMall's CEO, to replace Xhibit's existing CEO. Weiss was also named to Xhibit's Board of Directors.

51. On June 18, 2013, Najafi himself became a member of Xhibit's Board of Directors.

52. Despite knowledge of SkyMall's true operating losses, negative net worth, and shareholder deficits, Najafi and the other Defendants failed to take steps to correct the materially deceptive valuation of SkyMall at $25.5 million, instead engaging in a transaction, practice, and course of business that operated as a fraud or deceit on Plaintiffs and other public investors.

53. Specifically, Defendants Najafi and Weiss, in concert with Franke and

---

[3] SkyMall and Najafi instead buried SkyMall's financial statements in an amendment (Xhibit Form 8-K/A) that was not filed until August 1, 2013, more than 60 days after the Merger.

1 | Staudohar, on August 19, 2013, filed a SEC Form 10-Q for the period ended June 30,
2 | 2013, in which they deceptively reported that the acquisition of SkyMall had increased
3 | Xhibit's net worth from $3.024 million as of December 31, 2012 to $25.640 million as of
4 | June 30, 2013. In Xhibit's second quarter 2013 SEC Form 10-Q, the value Defendants
5 | attributed to Xhibit's intangible assets, tradename, and goodwill was $42.5 million.

6 |      54.    Defendants' inflated valuation of Xhibit's net worth in the SEC Form 10-Q
7 | for the period ended June 30, 2013, was a material part of their fraudulent or deceitful
8 | transactions, practices, and course of business.

9 |      55.    In September 2013, Najafi further solidified his control of Xhibit by using a
10 | Najafi affiliate (X Shares, LLC) to purchase 15 million additional Xhibit shares from
11 | Xhibit's former CEO at the below market price of $375,000 (2.5¢ per share). Later, just
12 | before the delayed SEC Form 10-K for FY 2013 was filed, Najafi would sell 14.6 million
13 | of the shares for a profit of over $8 million.

14 |      56.    In September 2013, at Najafi's direction former SkyMall CFO Wiley
15 | became Xhibit's CFO. Wiley assisted in preparing and certifying Xhibit's subsequent
16 | SEC filings.

17 |     **D.**    **Defendants Continue the Scheme and Delay Disclosure**

18 |      57.    On November 15, 2013, Defendants filed an SEC Form 10-Q for the period
19 | ended September 30, 2013, in which Defendants Najafi, Weiss, Franke, and Wiley
20 | reported Xhibit's net worth as $19.12 million and its year-to-date operating loss as only
21 | $12.5 million. The 10-Q was signed by Xhibit's CFO Wiley, a certified public accountant.

22 |      58.    Approximately a year later, on September 10, 2014, Defendants Najafi,
23 | Weiss, Franke, and Wiley amended the third quarter 2013 SEC Form 10-Q to show that
24 | the actual operating loss was $34 million (more than double) the $12.5 million previously
25 | reported. The earlier, misleading Form 10-Q that was filed on September 30, 2013 was a
26 | material part of Defendants' fraudulent or deceitful transactions, practices, and course of
27 | business.

28 |      59.    Although Xhibit's SEC Form 10-K for FY 2013 was due in April 2014,

1    Defendants delayed filing it. Defendants' delay in filing the Form 10-K for FY 2013 was

2    likewise a material part of their fraudulent or deceitful transactions, practices, and course

3    of business.

4        60.    In the interim, rather than disclose the truth about SkyMall's financial

5    condition, Defendants publicly assured investors, brokers, and market makers that Xhibit

6    was actually worth millions *more* than the value reported at the time of the Merger.

7        61.    For example, on April 16, 2014, Defendants Najafi, Weiss, Franke,

8    Staudohar, and Wiley purported to reassess SkyMall's value at the time of the Merger.

9    Defendants on that date jointly authorized and approved Xhibit's filing of an SEC Form

10   8-K. The April 16, 2014 8-K reported that Xhibit (a) had reassessed the Merger's value

11   and (b) had concluded that the Merger's net value was actually *over $150 million more*

12   *than what had been originally reported*. The Form 8-K was signed by Xhibit CFO Wiley.

13       62.    According to the April 16, 2014 SEC Form 8-K, Xhibit concluded that the

14   Merger should have been valued on the basis of the market price of Xhibit's stock at the

15   time of the Merger. On that basis, Defendants through Xhibit's Form 8-K reported that

16   the net fair value of the Merger was $177.76 million, rather than $25.5 million.

17       63.    In the same April 16, 2014 SEC Form 8-K Defendants indicated that

18   Xhibit's SEC Form 10-K for 2013 would be delayed based on a reassessment of the fair

19   value of SkyMall used in connection with the Merger, but deceptively stated that "we do

20   not believe the restatement will cause any changes to the previously reported cash, debt,

21   revenues, cost of revenues, or gross profit amounts" for previously reported periods (the

22   Previously Reported Line Items).

23       64.    The statement regarding the Previously Reported Line Items was deceptive

24   because Najafi and the other Defendants by April 16, 2014, knew or recklessly ignored

25   that the reassessed value was materially undermined by (a) SkyMall's pre-merger

26   financial statements (showing a negative net worth of nearly $5 million, an operating loss,

27   and a working capital deficit) and (b) Xhibit's post-merger operating history (showing

28   millions of dollars in losses).

1    65.   Defendants' filing of the deceptive SEC Form 8-K on April 16, 2014,

2    including the deceptive overstatement of SkyMall's value in the Merger, the deceptive

3    understatement of Xhibit's operating losses and the deceptive assertion regarding the

4    Previously Reported Line Items, was a material part of their fraudulent or deceitful

5    transactions, practices, and course of business.

6    66.   On May 9, 2014, Defendants filed an SEC Form 8-K in which they reported

7    that the reason for the delayed SEC Form 10-K for FY 2013 related to SEC comment

8    letters on its 2013 periodic reports.  In that regard, Najafi deceptively failed to disclose

9    that he was deliberately delaying filing the Form 10-K for FY 2013 until after he

10   completed the sale of Xhibit's loyalty business.

11   **E.    Revelation of the Truth**

12   67.   As a material part of the scheme Xhibit and Defendants deliberately delayed

13   disclosure of known facts concerning its nature and effect. Although due on April 1, 2014,

14   Xhibit and Defendants did not in fact file Xhibit's Form 10-K for FY 2013 until September

15   10, 2014.

16   68.   In Xhibit's delayed SEC Form 10-K for FY 2013, Xhibit and Defendants

17   once again changed the reported accounting for the Merger, this time based upon the

18   investigation of the Special Investigative Committee and the Jones Day law firm.  Xhibit

19   and Defendants now conceded that the fair value of the Xhibit shares issued to SkyMall's

20   shareholders should have been used to value the Merger. Under the reassessment, an

21   additional $125.596 million in consideration was recorded. In the 2013 Form 10-K, an

22   impairment charge was reported as an operating expense that reduced Xhibit's net income

23   for FY 2013 to a loss of $172.202 million.  Moreover, Xhibit and Defendants now reported

24   Xhibit's corrected net worth at only $10.2 million as of December 31, 2013.

25   69.   Xhibit and Defendants on September 10, 2014, also disclosed for the first

26   time the sale of SkyMall's loyalty business (SkyMall Ventures, the only performing

27   segment of its business) for $24 million, more than $15 million of which went to pay off

28   Najafi affiliates who had extended credit to SkyMall.

1    70.    On October 29, 2014, Najafi resigned as an Xhibit director, and abandoned

2    Xhibit.

3    71.    On November 13, 2014, Weiss resigned as Xhibit's CEO.

4    72.    On January 22, 2015, Xhibit and SkyMall LLC both filed bankruptcy

5    petitions.

6    73.    On August 26, 2015, the bankruptcy court entered its order confirming a

7    joint plan of liquidation under Chapter 11 of the Bankruptcy Code for both Xhibit and

8    SkyMall.

9    **F.    No Good Faith Defense**

10    74.    Defendants Najafi, Weiss, Franke, and Staudohar had a business

11    background in finance and understood financial statements.  Najafi was CEO of a private-

12    equity firm with a Master's degree in business and economics from Harvard, and a B.A.

13    in economics and development studies from the University of California, Berkley.  Weiss

14    is a Princeton graduate who had been SkyMall's CEO before becoming Xhibit's CEO.

15    He had over 30 years' experience in senior management at a variety of technology and

16    software companies before becoming Xhibit's CEO.  Franke held an MBA from ASU and

17    was the principal of a private-equity firm.  Staudohar was experienced as a CPA and Chief

18    Financial Officers of numerous companies and held a degree in accounting.  He was a

19    member of Xhibit's Audit Committee.[4]

20    75.    Prior to the Merger, Defendants Najafi, Weiss, Franke, and Staudohar

21    received copies of both SkyMall and Xhibit's financial statements. From reading Xhibit

22    and SkyMall's pre-Merger financial statements, Najafi, Weiss, Franke, and Staudohar

23    knew that the effect of merging Xhibit with SkyMall was to render Xhibit insolvent. After

24    the Merger, Xhibit's consolidated financial statements showed a negative net worth, an

25    operating loss, and a working-capital deficit.   Despite Xhibit's insolvency and with

26    reckless disregard for the truth about Xhibit's financial condition, these Defendants each

27

28    ---
[4] Defendants' background is set forth in the Xhibit 2013 SEC Form 10-K, at 52-53.

1   agreed to value SkyMall at $25.5 million in the Merger.

2       76.    Wiley was SkyMall's former CFO, who became Xhibit's CFO in September

3   2013. Because of his previous position at SkyMall, Wiley was familiar with SkyMall's

4   pre-merger and post-merger financial condition.  After becoming Xhibit's CFO, Wiley

5   signed the deceptive Form 10-Q filed in September 2013 and the deceptive Form 8-K filed

6   in April 2014.

7       **G.    Tender**

8       77.    Individually and on behalf of the members of the Proposed Class, Plaintiffs

9   tender to Defendants all consideration received in connection with the securities that

10  Plaintiffs purchased, and offer to do any other acts necessary for rescission under the

11  common law or A.R.S. § 44-2001(A).  In return, Plaintiffs demand rescission with interest

12  and attorney fees as provided in A.R.S. § 44-2001(A). Alternatively, Plaintiffs and the

13  Proposed Class seek rescissionary damages.

14              **The Proposed Plaintiff Class**

15      78.    Plaintiffs bring this action on behalf of themselves individually and the

16  following Proposed Class:

17          All persons who purchased Xhibit stock between May 16, 2013
18          and September 10, 2014.

19  Excluded from the Proposed Class are: (a) Defendants and (b) members of their families,

20  their estates, any entity in which they have a controlling interest or which is a parent,

21  subsidiary, or affiliate of or is or was controlled by them, and their officers, directors,

22  managers, employees, affiliates, agents, legal representatives, heirs, predecessors,

23  successors, and assigns.

24      79.    The members of the Proposed Class are so numerous that joinder of all

25  members is impracticable.  The disposition of their claims in a class action will provide

26  substantial benefits to the parties, the Proposed Class members, and the Court.

27      80.    There is a well-defined community of interest in the questions of law and

28  fact involved in this case.  Questions of law and fact common to the members of the

13

Proposed Class that predominate over questions that may affect only individual members of the Proposed Class include:

- whether the Defendants are primarily liable for violations of the Arizona Securities Act;

- whether Defendants are secondarily liable for violations of the Arizona Securities Act;

- whether Defendants may invoke any statutory defense to liability under the Arizona Securities Act;

- whether Plaintiffs and the other members of the Proposed Class are entitled to rescission; and

- whether Plaintiffs and the other members of the Proposed Class are alternatively entitled to rescissionary damages.

81.     Plaintiffs' claims are typical of those of the other members of the Proposed Class.  Plaintiffs will adequately protect the interests of the Proposed Class members.  Plaintiffs have retained competent counsel to represent the Proposed Class.  Plaintiffs' legal counsel is experienced in class-action securities litigation.  Plaintiffs have no interest that conflicts with those of the other members of the Proposed Class.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### Legal Causes of Action

### Count One
### (Primary Statutory Liability under A.R.S. § 44-2003(A)(3))

83.     Plaintiffs incorporate the preceding allegations.

84.     Xhibit's stock constitutes a security under Arizona law.

85.     Defendants jointly engaged in the unlawful sale of securities to Plaintiffs and other members of the Proposed Class in violation of A.R.S. § 44-1991(A)(3).

86.     Defendants violated A.R.S. § 44-1991(A)(3) by engaging in a transaction, practice, or course of business that operated as a fraud or deceit, inducing the unlawful sale of securities to Plaintiffs and the other members of the Proposed Class within the meaning of A.R.S.§ 44-2003(A).

87.     Defendants' scheme encompassed misconduct beyond the particular

14

misrepresentations or omissions alleged above -- including the Merger itself, the delay in filing the SEC Form 10-K for FY 2013 and Form 8-K for 3Q 2013 and the undisclosed negotiations for the sale of Xhibit's loyalty business -- to essentially obtain public funding to pay off SkyMall's debt to Najafi affiliates.

88.     Scienter is not an element of Plaintiffs' A.R.S. § 44-1991(A)(3) claim.[5]

89.     Reliance is not an element of Plaintiffs' A.R.S. § 44-1991(A)(3) claim.[6]

90.     Loss causation is not an element of Plaintiffs' A.R.S. § 44-1991(A)(3) claim for rescission.[7]

91.     Under A.R.S. § 44-2003(A) Defendants are jointly and severally liable for the unlawful scheme in violation of A.R.S. § 44-1991(A)(3).  Except for its bankruptcy, Xhibit would also be jointly and severally liable under A.R.S. § 44-2003(A)(3).

92.     Under A.R.S. § 44-2001(A), Defendants are liable for rescission or rescissionary damages as to the alleged violations of A.R.S. § 44-1991(A)(3), plus costs, attorney fees, and pre- and post-judgment interest.

## Count Two
### (Statutory Control Liability Under A.R.S. § 44-1999(B))

93.     Plaintiffs incorporate the preceding allegations.

94.     As alleged in Count One, Xhibit committed violations of A.R.S. § 44-1991(A)(3) for which, absent its bankruptcy, it would be primarily liable under A.R.S. § 44-2003(A).

95.     Individually or as a group, Defendants controlled or had the power to directly or indirectly control Xhibit within the meaning of A.R.S. § 44-1999(B) when Xhibit's violations of § 44-1991(A) occurred.  As statutory controlling persons under A.R.S. § 44-1999(B), Defendants are jointly and severally liable for Xhibit's violations of § 44-1991(A).

[5] *Facciola v. Greenburg Traurig, LLP*, 2011 WL 2268950, at *3 (D. Ariz. June 9, 2011).

[6] *Facciola v. Greenburg Traurig, LLP*, 281 F.R.D. 363, 371 (D. Ariz. 2012).

[7] *Grand v. Nacchio*, 214 Ariz. 9, 24-25, 147 P.3d 763, 778-79 (Ct. App. 2006).

96.     Accordingly, under this Count Defendants are liable as statutory control persons for rescission for the Count One violations of § 44-1991(A)(3), plus costs, attorney fees, and pre- and post-judgment interest.

### Demand for Relief

Therefore, Plaintiffs demand judgment against Defendants jointly and severally, on behalf of themselves and the other members of the Proposed Class, for:

A.     rescission (or rescissionary damages);

B.     costs and attorneys' fees;

C.     pre- and post-judgment interest; and

E.     such other and further relief needed to provide Plaintiffs and the other members of the Proposed Class with a complete remedy.

### Demand for Jury Trial

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  August 23, 2016.

BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.

By: _____
    Andrew S. Friedman
    afriedman@bffb.com
    2325 E. Camelback Rd., Suite 300
    Phoenix, AZ 85016
    Telephone:  (602) 274-1100
    Facsimile:  (602) 274-1199

    *Attorneys for Plaintiffs*

16

# EXHIBIT A

## ARS § 44-2081(B) Certificate

Plaintiff, Bill McCauley, hereby states:

1.    I have reviewed the complaint and authorized its filing.

2.    I did not purchase the security that is the subject of the complaint at the direction of the plaintiff's counsel or in order to participate in any private action arising under this chapter.

3.    I am willing to serve as a representative party on behalf of a class, including providing testimony at a deposition or trial.

4.    The table attached as Exhibit A to this certificate sets forth all of my transactions involving the security that is the subject of the complaint during the class period specified in the complaint.

5.    I have not within three years of signing this certificate sought to serve as a representative party on behalf of a class in any other action under A.R.S Title 44, Chapter 12, the securities act of 1933 (15 United States Code §§ 77a through 77bbbb) or the securities exchange act of 1934 (15 United States Code §§ 78a through 78ll).

6.    I will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with A.R.S § 44-2081(J).

I certify under penalty of perjury that the foregoing is true and correct. Executed on August 23, 2016.

_Bill McCauley_
Bill McCauley

# EXHIBIT A

# EXHIBIT A
## Table of Transactions

| DATE | TYPE | SHARES | AMOUNT |
|---|---|---|---|
| 5/17/2013 | Buy | 100 | $447.00 |
| 5/17/2013 | Buy | 8,100 | $35,640.00 |
| 5/17/2013 | Buy | 170 | $732.70 |
| 5/17/2013 | Buy | 24,710 | $113,666.00 |
| 5/17/2013 | Buy | 190 | $893.00 |
| 5/17/2013 | Buy | 1,730 | $8,217.50 |
| 6/3/2013 | Buy | 5,000 | $27,800.00 |
| 6/4/2013 | Buy | 8,375 | $50,250.00 |
| 6/6/2013 | Buy | 10,000 | $60,000.00 |
| 6/6/2013 | Buy | 6,617 | $39,040.30 |
| 6/7/2013 | Buy | 10,000 | $56,000.00 |
| 6/7/2013 | Buy | 8 | $44.80 |
| 6/20/2013 | Buy | 5,000 | $26,750.00 |
| 6/20/2013 | Buy | 10,000 | $53,507.00 |
| 6/21/2013 | Buy | 5,000 | $26,750.00 |
| 6/21/2013 | Buy | 10,000 | $52,509.99 |
| 6/21/2013 | Buy | 10,000 | $53,507.00 |
| 6/24/2013 | Buy | 5,000 | $26,007.00 |
| 6/24/2013 | Buy | 5,000 | $26,007.00 |
| 6/24/2013 | Buy | 5,000 | $26,007.00 |
| 6/24/2013 | Buy | 5,000 | $26,007.00 |
| 6/24/2013 | Buy | 5,000 | $26,007.00 |
| 6/24/2013 | Buy | 100 | $527.00 |
| 6/25/2013 | Buy | 900 | $4,732.00 |
| 6/25/2013 | Buy | 4,000 | $20,607.00 |
| 6/27/2013 | Buy | 25,000 | $120,007.00 |
| 6/27/2013 | Buy | 5,000 | $22,507.00 |
| 6/27/2013 | Buy | 9,176 | $42,127.83 |
| 6/27/2013 | Buy | 50 | $240.49 |
| 6/27/2013 | Buy | 774 | $3,593.61 |
| 6/27/2013 | Buy | 10,000 | $50,107.00 |
| 7/1/2013 | Buy | 10,000 | $44,109.99 |
| 7/3/2013 | Buy | 5,000 | $21,257.00 |
| 7/10/2013 | Buy | 10,000 | $41,207.00 |
| 7/10/2013 | Buy | 14,000 | $58,107.00 |
| 7/10/2013 | Buy | 1,000 | $4,130.00 |
| 7/17/2013 | Buy | 16,000 | $53,609.99 |
| 7/17/2013 | Buy | 4,000 | $13,360.00 |
| 7/31/2013 | Buy | 5,000 | $15,507.00 |
| 7/31/2013 | Buy | 10,000 | $31,509.99 |
| 7/31/2013 | Buy | 5,000 | $15,757.00 |

# EXHIBIT A
## Table of Transactions

| DATE | TYPE | SHARES | AMOUNT |
|---|---|---|---|
| 8/7/2013 | Buy | 25,000 | $52,509.99 |
| 8/7/2013 | Buy | 15,000 | $30,150.00 |
| 8/7/2013 | Buy | 29,400 | $61,747.00 |
| 8/7/2013 | Buy | 600 | $1,230.00 |
| 8/7/2013 | Buy | 10,000 | $20,100.00 |
| 8/15/2013 | Buy | 4,600 | $5,987.00 |
| 8/15/2013 | Buy | 2,000 | $2,580.00 |
| 8/15/2013 | Buy | 2,493 | $2,991.60 |
| 8/15/2013 | Buy | 300 | $342.00 |
| 8/15/2013 | Buy | 100 | $141.00 |
| 8/15/2013 | Buy | 2,100 | $3,157.00 |
| 8/15/2013 | Buy | 10,500 | $16,807.00 |
| 8/16/2013 | Buy | 77,907 | $124,658.20 |
| 8/23/2013 | Buy | 30,000 | $50,407.00 |
| 9/5/2013 | Buy | 25,000 | $38,757.00 |
| 9/5/2013 | Buy | 25,000 | $37,507.00 |
| 9/5/2013 | Buy | 2,000 | $3,107.00 |
| 9/5/2013 | Buy | 48,000 | $76,807.00 |
| 10/1/2013 | Buy | 9,945 | $19,101.40 |
| 10/1/2013 | Buy | 55 | $104.50 |
| 10/1/2013 | Buy | 10,000 | $18,007.00 |
| 11/19/2013 | Buy | 50,000 | $77,507.00 |
| 11/27/2013 | Buy | 10,000 | $16,007.00 |
| 12/4/2013 | Buy | 900 | $1,177.00 |
| 12/5/2013 | Buy | 9,100 | $11,837.00 |
| 12/9/2013 | Buy | 3,000 | $4,357.00 |
| 12/11/2013 | Buy | 3,800 | $6,087.00 |
| 12/12/2013 | Buy | 240 | $427.00 |
| 12/13/2013 | Buy | 2,000 | $3,867.00 |
| 12/13/2013 | Buy | 960 | $1,831.00 |
| 2/12/2014 | Buy | 1,920 | $2,234.20 |
| 2/13/2014 | Buy | 9,900 | $12,877.00 |
| 2/13/2014 | Buy | 7,300 | $9,862.00 |
| 2/13/2014 | Buy | 6,500 | $8,977.00 |
| 2/14/2014 | Buy | 1,300 | $1,801.00 |
| 2/18/2014 | Buy | 14,800 | $18,507.00 |
| 2/19/2014 | Buy | 980 | $1,281.00 |
| 2/19/2014 | Buy | 7,300 | $9,862.00 |
| 2/21/2014 | Buy | 15,363 | $20,439.79 |
| 2/24/2014 | Buy | 34,000 | $45,227.00 |
| 2/25/2014 | Buy | 637 | $847.84 |

# EXHIBIT A
## Table of Transactions

| DATE | TYPE | SHARES | AMOUNT |
|------|------|--------|--------|
| 3/3/2014 | Buy | 9,400 | $12,227.00 |
| 3/4/2014 | Buy | 28,820 | $38,914.00 |
| 3/5/2014 | Buy | 9,900 | $13,570.00 |
| 3/6/2014 | Buy | 1,880 | $2,639.00 |
| 3/10/2014 | Buy | 4,034 | $5,654.60 |
| 3/10/2014 | Buy | 19,100 | $27,702.00 |
| 3/10/2014 | Buy | 2,080 | $2,995.20 |
| 3/11/2014 | Buy | 6,800 | $10,887.00 |
| 3/12/2014 | Buy | 11,862 | $18,986.20 |
| 3/12/2014 | Buy | 6,124 | $9,186.00 |
| 3/14/2014 | Buy | 8,500 | $13,607.00 |
| 3/14/2014 | Buy | 3,500 | $5,782.00 |
| 3/17/2014 | Buy | 8,000 | $13,207.00 |
| 3/17/2014 | Buy | 3,145 | $5,353.50 |
| 3/17/2014 | Buy | 12,000 | $21,007.00 |
| 3/17/2014 | Buy | 1,250 | $2,175.00 |
| 3/17/2014 | Buy | 500 | $860.00 |
| 3/17/2014 | Buy | 3,600 | $6,199.00 |
| 3/17/2014 | Buy | 1,893 | $3,376.54 |
| 3/18/2014 | Buy | 2,600 | $4,687.00 |
| 3/18/2014 | Buy | 5,000 | $8,750.00 |
| 3/18/2014 | Buy | 12 | $28.60 |
| 3/26/2014 | Buy | 6,032 | $8,753.40 |
| 3/26/2014 | Buy | 968 | $1,459.00 |
| 3/27/2014 | Buy | 11,305 | $18,926.49 |
| 4/2/2014 | Buy | 500 | $882.00 |
| 4/2/2014 | Buy | 1,000 | $1,710.00 |
| 4/2/2014 | Buy | 8,500 | $15,307.00 |
| 4/10/2014 | Buy | 2,000 | $3,007.00 |
| 4/14/2014 | Buy | 1,800 | $2,599.00 |
| 4/14/2014 | Buy | 3,000 | $4,507.00 |
| 4/14/2014 | Buy | 200 | $296.00 |
| 4/21/2014 | Buy | 10,000 | $16,956.99 |
| 4/21/2014 | Buy | 15,000 | $25,332.99 |
| 5/15/2014 | Buy | 13,500 | $10,112.04 |
| 5/15/2014 | Buy | 9,550 | $5,737.00 |
| 5/16/2014 | Buy | 16,300 | $17,937.00 |
| 5/16/2014 | Buy | 200 | $218.00 |
| 5/16/2014 | Buy | 200 | $216.00 |
| 5/16/2014 | Buy | 200 | $212.00 |
| 5/16/2014 | Buy | 600 | $630.00 |

# EXHIBIT A
## Table of Transactions

| DATE | TYPE | SHARES | AMOUNT |
|---|---|---|---|
| 5/16/2014 | Buy | 200 | $200.00 |
| 5/16/2014 | Buy | 21,204 | $26,724.04 |
| 5/16/2014 | Buy | 1,446 | $1,793.04 |
| 5/16/2014 | Buy | 100 | $122.00 |
| 5/19/2014 | Buy | 1,000 | $1,157.00 |
| 5/28/2014 | Buy | 4,000 | $3,606.60 |
| 5/28/2014 | Buy | 1,000 | $890.00 |
| 5/28/2014 | Buy | 4,000 | $3,607.00 |
| 5/28/2014 | Buy | 1,000 | $899.90 |
| 5/29/2014 | Buy | 14,000 | $12,607.00 |
| 5/30/2014 | Buy | 1,092 | $1,022.56 |
| 5/30/2014 | Buy | 1,000 | $900.00 |
| 6/2/2014 | Buy | 17,057 | $16,211.15 |
| 6/2/2014 | Buy | 3,900 | $3,907.00 |
| 6/3/2014 | Buy | 6,100 | $6,107.00 |
| 6/4/2014 | Buy | 851 | $858.00 |
| 6/4/2014 | Buy | 20,000 | $20,007.00 |
| 6/5/2014 | Buy | 51,000 | $51,007.00 |
| 6/9/2014 | Buy | 5,000 | $4,997.00 |
| 6/11/2014 | Buy | 2,000 | $1,837.00 |
| 6/11/2014 | Buy | 5,820 | $5,710.60 |
| 6/11/2014 | Buy | 2,180 | $2,114.60 |
| 6/12/2014 | Buy | 10,000 | $9,797.00 |
| 6/17/2014 | Buy | 10,000 | $9,507.00 |
| 6/18/2014 | Buy | 3,500 | $3,227.00 |
| 6/18/2014 | Buy | 5,500 | $4,950.00 |
| 6/18/2014 | Buy | 1,000 | $880.00 |
| 6/19/2014 | Buy | 10,000 | $9,007.00 |
| 6/20/2014 | Buy | 5,000 | $4,507.00 |
| 7/8/2014 | Buy | 10,000 | $9,389.99 |
| 7/22/2014 | Buy | 11,195 | $7,845.23 |
| 7/24/2014 | Buy | 29,900 | $17,947.00 |
| 7/24/2014 | Buy | 10,008 | $6,003.80 |
| 7/24/2014 | Buy | 92 | $63.12 |
| 7/25/2014 | Buy | 20,000 | $13,209.99 |
| 7/25/2014 | Buy | 20,000 | $13,316.99 |
| 7/28/2014 | Buy | 1,000 | $699.99 |
| 7/29/2014 | Buy | 28,000 | $20,979.99 |
| 7/30/2014 | Buy | 9,000 | $6,639.99 |
| 8/6/2014 | Buy | 20,000 | $13,533.99 |
| 8/11/2014 | Buy | 31,000 | $19,516.99 |

4

# EXHIBIT A
## Table of Transactions

| DATE | TYPE | SHARES | AMOUNT |
|---|---|---|---|
| 8/13/2014 | Buy | 5,000 | $2,257.99 |
| 8/22/2014 | Buy | 5,000 | $3,107.99 |
| 8/25/2014 | Buy | 20,000 | $13,647.99 |
| | **TOTAL** | **1,465,000** | **$2,838,919.79** |

# EXHIBIT B

# ARS § 44-2081(B) Certificate

Plaintiff, Edward D. Kendler, sole trustee of the Kendler Family Trust, hereby states:

1.       I have reviewed the complaint and authorized its filing.

2.       I did not purchase the security that is the subject of the complaint at the direction of the plaintiff's counsel or in order to participate in any private action arising under this chapter.

3.       I am willing to serve as a representative party on behalf of a class, including providing testimony at a deposition or trial.

4.       The following table sets forth all of my transactions involving the security that is the subject of the complaint during the class period specified in the complaint:

| DATE | TYPE | SHARES | AMOUNT |
|------|------|--------|--------|
| 5/30/2013 | Buy | 1,430 | $8,228.28 |
| 5/30/2013 | Buy | 3,000 | $17,268.12 |
| 5/31/2013 | Buy | 5,000 | $27,517.90 |
| 5/31/2013 | Buy | 70 | $401.20 |
| 5/31/2013 | Buy | 500 | $2,890.70 |
| 6/18/2013 | Buy | 2,700 | $14,858.95 |
| 7/31/2013 | Buy | 500 | $1,533.95 |
| 8/1/2013 | Buy | 500 | $1,558.95 |
| 8/7/2013 | Buy | 1,000 | $2,008.95 |
| 8/16/2013 | Buy | 3,000 | $4,958.95 |
| | **TOTAL** | **17,700** | **$81,225.95** |

5.       I have not within three years of signing this certificate sought to serve as a representative party on behalf of a class in any other action under A.R.S Title 44, Chapter 12, the securities act of 1933 (15 United States Code §§ 77a through 77bbbb) or the securities exchange act of 1934 (15 United States Code §§ 78a through 78ll).

1

6.      I will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with A.R.S § 44-2081(J).

I certify under penalty of perjury that the foregoing is true and correct.  Executed on August 22, 2016.

*Edward D. Kendler*

Edward D. Kendler, sole trustee of the Kendler Family Trust

2



MICHAEL K. JEANES, CLERK
BY
*P. Shepardson*   DEP
T. SHEPARDSON, FILED

**16 SEP 13  AM 11: 14**

| | |
|---|---|
| Name of Person Filing:  Andrew S. Friedman | If you would like legal advice from a lawyer, |
| Your Address:  2325 E. Camelback Road, Suite 300 | Contact the Lawyer Referral Service at |
| Your City, State, Zip Code:  Phoenix, AZ 85016 | 602-257-4434 |
| Your Telephone Number:  602-274-1100 | or |
| Attorney Bar Number (if applicable):  005425 | www.maricopalawyers.org |
| Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant | Sponsored by the Maricopa County Bar Association |

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

BILL McCAULEY, et al.
_____
**Name of Plaintiff**

Case No.:  **CV 2016-013272**

JAHM J. NAJAFI and CHERYL NAJAFI,
husband and wife, et al.
_____
**Name of Defendant**

## SUMMONS

---

**WARNING: This is an official document from the court that affects your rights.  Read this carefully.
If you do not understand it, contact a lawyer for help.**

---

**FROM THE STATE OF ARIZONA TO** _____  DAVID P. FRANKE and STEPHANIE M. RANKIN FRANKE,
husband and wife
_____
**Name of Defendant**

1.   A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.   If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.  Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.   If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.   You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

**Form #210**  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

5.    Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

AUG **2 3** 2016

SIGNED AND SEALED this date

MICHAEL K. JEANES, CLERK

MICHAEL K. JEANES, CLERK OF COURT

By _____
          Deputy Clerk

T. SHEPARDSON

**Form #210**  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County



MICHAEL·K·JEANES· CLERK
BY
*P. Shepardson*
DEP
T. SHEPARDSON. FILED

**16 SEP 13  AM 11: 14**

Name of Person Filing: Andrew S. Friedman
Your Address: 2325 E. Camelback Road, Suite 300
Your City, State, Zip Code: Phoenix, AZ 85016
Your Telephone Number: 602-274-1100
Attorney Bar Number (if applicable): 005425
Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

If you would like legal advice from a lawyer.
Contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

BILL McCAULEY, et al.

**Name of Plaintiff**

Case No.:

CV2016-013272

JAHM J. NAJAFI and CHERYL NAJAFI,
husband and wife, et al.

**Name of Defendant**

**SUMMONS**

> **WARNING: This is an official document from the court that affects your rights. Read this carefully.**
> **If you do not understand it, contact a lawyer for help.**

FROM THE STATE OF ARIZONA TO   SCOTT WILEY and GAIL E. WILEY, husband and wife

**Name of Defendant**

1.  A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.  Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.  If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served.  Service by a registered process server or the Sheriff is complete when made.  Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

5.   Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.


SIGNED AND SEALED this date   AUG 2 3 2016          **MICHAEL K. JEANES,** CLERK

                                                    MICHAEL K. JEANES, CLERK OF COURT


By_____
        Deputy Clerk

                    T. SHEPARDSON

SUM                                    **Form #210** LRD 03/23/2004  ALL RIGHTS RESERVED
                                       © Clerk of Superior Court of Arizona in Maricopa County

MICHAEL K. JEANES, CLERK
BY _____ DEP

T. SHEPARDSON, FILED

16 SEP 13 AM 11:14

```
                                          ┌─────────────┐
                                          │  ORIGINAL   │
                                          └─────────────┘
```

If you would like legal advice from a lawyer,
Contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

Name of Person Filing:  Andrew S. Friedman
Your Address:  2325 E. Camelback Road, Suite 300
Your City, State, Zip Code: Phoenix, AZ 85016
Your Telephone Number: 602-274-1100
Attorney Bar Number (if applicable): 005425
Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

BILL McCAULEY, et al.

**Name of Plaintiff**

Case No.: CV2016-013272

JAHM J. NAJAFI and CHERYL NAJAFI,
husband and wife, et al.

**Name of Defendant**

## SUMMONS

> **WARNING: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.**

FROM THE STATE OF ARIZONA TO _____ JAMES D. STAUDOHAR and KATHLEEN M. STAUDOHAR, husband and wife

**Name of Defendant**

1.   A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.   If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint.  To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona  85210-6201 or Office of the Clerk of the Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374.   Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.   If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.   You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

5.    Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

SIGNED AND SEALED this date                    **MICHAEL K. JEANES, CLERK**

AUG 2 3 2016  MICHAEL K. JEANES, CLERK OF COURT

By_____

   Deputy Clerk

                    T. SHEPARDSON

**Form #210** LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

MICHAEL K. JEANES, CLERK
BY _____ DEP
*P. Shepardson*
T. SHEPARDSON. FILED

16 AUG 23  PM 4: 31

1  Andrew S. Friedman (State Bar No. 005425)
   afriedman@bffb.com
2  **BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.**
   2325 E. Camelback Road, Suite 300
3  Phoenix, Arizona 85016
   Telephone:   (602) 274-1100
4  Facsimile:   (602) 274-1199

5
   *Attorneys for Plaintiffs*
6

7                    **SUPERIOR COURT OF ARIZONA**

8                         **MARICOPA COUNTY**

9  BILL McCAULEY and EDWARD D.              CV2016-013272
   KENDLER, sole trustee of the KENDLER
10 FAMILY TRUST, individually and on    Case No. _____
   behalf of all others similarly situated,
11
                                          **CERTIFICATE REGARDING**
12               Plaintiffs,              **COMPULSORY ARBITRATION**
   vs.
13
   JAHM J. NAJAFI and CHERYL NAJAFI,
14 husband and wife; KEVIN M. WEISS and
   ELIZABETH S. WEISS, husband and wife;
15 DAVID P. FRANKE and STEPHANIE M.
   RANKIN FRANKE, husband and wife;
16 JAMES D. STAUDOHAR and
   KATHLEEN M. STAUDOHAR, husband
17 and wife; SCOTT WILEY and GAIL E.
   WILEY, husband and wife,
18
                 Defendants.
19

20      The undersigned certifies that the largest award sought by the Plaintiff, but

21 excluding interest, attorneys' fees, and costs does exceed the limits set by local rule for

22 compulsory arbitration.  This case is not subject to arbitration.

23

                                    1

1   DATED this 23rd day of August, 2016.

2

3                               BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.

4                               By: _____

5                                   Andrew S. Friedman
                                    afriedman@bffb.com
6                                   2325 E. Camelback Rd., Suite 300
                                    Phoenix, AZ 85016
7                                   Telephone:  (602) 274-1100
                                    Facsimile:  (602) 274-1199

8                                   *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23