**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bill McCauley, et al.,<br><br>    Plaintiffs,<br>vs.<br><br>Jahm J. Najafi, et al.,<br><br>    Defendants. | No. CV-16-03461-PHX-SPL<br><br>**ORDER** |

Before the Court are Defendants'[1] Motion to Dismiss (Doc. 63) and Request for Judicial Notice (Doc. 64). For the following reasons, the Motion to Dismiss will be granted in part and the Request for Judicial Notice will be denied.

**I. BACKGROUND**

 **A. The Merger**

This case arises from the merger of two companies, SkyMall[2] and Xhibit Corporation ("Xhibit"). (Doc. 62 at 2) SkyMall operated a specialty-retail business offering merchandise through a catalog and website. (Doc. 62 at 7) In addition, SkyMall operated a loyalty business that provided merchandise, gift cards, and experiential rewards to

---

[1] Defendants include: Jahm J. Najafi and Cheryl Najafi, as husband and wife; Kevin M. Weiss and Elizabeth S. Weiss, as husband and wife; and Scott Wiley and Gail E. Wiley, as husband and wife. (Doc. 62 at 1)

[2] "SkyMall" means, collectively, SkyMall, LLC, SkyMall Ventures, LLC and their corporate predecessors SkyMall Holdings Corporation, SkyMall, Inc. and SkyMall Ventures, Inc. (Doc. 62 at 2)

corporate loyalty-program members. (Doc. 62 at 7) In April of 2012, companies affiliated with Defendant Najafi acquired SkyMall. (Doc. 62 at 7) Over an extended time, Defendant Najafi's affiliated businesses loaned SkyMall over $5 million dollars. (Doc. 62 at 3)

In the spring of 2013, Defendant Najafi met with Xhibit's management and proposed a merger between SkyMall and Xhibit. (Doc. 62 at 8) Xhibit operated as a cloud-based marketing and technology company focused on digital advertising and social media development. (Doc. 62 at 8) In May of 2013, Xhibit and SkyMall executed the merger, and the merger was announced through a press release. (Docs. 62 at 9; 64-7 at 267) In the press release, Defendants Najafi and Weiss publicly represented that the merger would strengthen both Xhibit and SkyMall's existing businesses and position them for continued global growth. (Doc. 64-7 at 267-70)

Also, in May of 2013, Xhibit filed a Form 8-K with the Securities Exchange Commission ("SEC"), which valued the merger at $25.5 million. (Doc. 62 at 9) At that time, Xhibit's stock was publicly traded at $4.00 per share. (Doc. 62 at 8) However, Defendant Najafi's affiliated company acquired 15 million shares of Xhibit stock for two and a half (2.5) cents per share. (Doc. 62 at 10, 13) After the merger, Defendants Najafi and Weiss became controlling persons and directors on Xhibit's board. (Doc. 62 at 5-6) In addition, Defendant Wiley became a controlling person and chief financial officer of Xhibit. (Doc. 62 at 6)

After the merger, the SEC sent Xhibit multiple inquiries about the valuation method used for the merger. (Doc. 62 at 3-4) Ultimately, the SEC concluded that Xhibit had incorrectly valued the merger, and the valuation had to be raised by over $150 million. (Docs. 62 at 3-4; 63 at 2-3) On April 16, 2014, Xhibit filed a Form 8-K, indicating that all of its publicly filed financial statements since the merger were inaccurate and should no longer be relied upon. (Doc. 62 at 12)

Acting as directors and controlling members, Defendants decided to sell SkyMall's loyalty program, which was the only profitable SkyMall business at the time. (Doc. 62 at 3) On September 9, 2014, Xhibit sold the loyalty program. (Doc. 62 at 3) The next day,

Xhibit filed an updated Form 10-K for fiscal year 2013, which reflected the new merger valuation of approximately $177 million. (Doc. 62 at 12, 16) The updated Form 10-K included: (1) an impairment charge of $137 million; (2) a stock compensation expense of $27 million; and (3) the $24 million sale of SkyMall's loyalty business. (Doc. 62 at 16) In addition, Xhibit's net worth at the end of 2013 was updated to $10.2 million instead of the previously reported $19.12 million. (Doc. 62 at 11, 15-16) Just before the delayed Form 10-K for fiscal year 2013 was filed, Defendant Najafi sold 14.6 million of his Xhibit shares for a profit of over $8 million. (Doc. 62 at 10)

In October of 2014—approximately one month after the updated 10-K disclosure—Defendant Najafi resigned from Xhibit's board of directors. (Doc. 62 at 16) Less than a month later, Defendant Weiss resigned as Xhibit's CEO. (Doc. 62 at 16) On January 22, 2015, Xhibit filed for bankruptcy.[3] (Doc. 62 at 17) On August 26, 2015, the Bankruptcy Court confirmed a joint plan of liquidation. (Doc. 64-7 at 179)

### B. The Lawsuit

In August of 2016, Bill McCauley and Edward D. Kendler (as trustee of the Kendler Family Trust) (collectively, "Plaintiffs") filed this action in the Maricopa County Superior Court for violations of the Arizona Securities Act ("ASA") on behalf of themselves and a class of other similarly situated persons who purchased and held Xhibit's unrestricted stock between May 16, 2013 and September 10, 2014. (Docs. 1-1; 62 at 2) Plaintiffs allege that Defendants intentionally concealed SkyMall's bad financial condition until after the merger to create an artificial public market to sell Xhibit's stock and SkyMall's profitable businesses, all in an effort to pay off a significant amount of debt owed to Defendant Najafi's affiliated businesses. (Doc. 62 at 2-3) Plaintiffs assert that, after Defendant Najafi's affiliated companies acquired SkyMall in 2012, he realized that SkyMall was losing millions of dollars and could only stay in business if his affiliated companies provided credit to cover SkyMall's operating losses. (Doc. 62 at 8-9) Plaintiffs assert that

---

[3] SkyMall also filed for bankruptcy the same day. (Doc. 62 at 17)

this was the motive for Defendant Najafi to devise a scheme to merge Xhibit and Skymall, thereby acquiring stock to sell at a significant premium. (Doc. 62 at 2-3) Plaintiffs assert that the merger scheme was the proximate cause of their losses after Xhibit filed for bankruptcy. (Doc. 62 at 16) On October 11, 2016, Defendants filed a notice of removal with this Court. (Doc. 1)

On January 26, 2017, Defendants filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim. (Doc. 28) Plaintiffs opposed the motion. (Doc. 32) The Court granted the motion and terminated the case. (Doc. 40) Plaintiffs appealed. (Doc. 47) The Ninth Circuit determined that Plaintiffs had sufficiently pled two of their ASA claims and that the Court had abused its discretion by not allowing Plaintiffs leave to amend their other claims. (Doc. 50-1) On remand, Plaintiffs filed a Third Amended Complaint ("TAC"). (Doc. 62) Defendants then filed another Rule 12(b)(6) Motion (the "Motion"). (Doc. 63) Defendants again allege that Plaintiffs fail to plead a claim under the ASA. (Doc. 63) In addition, Defendants request that the Court take judicial notice of several documents and consider those documents when ruling on the Motion. (Doc. 64)

**II.     LEGAL STANDARD**

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the [] claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim is appropriate when there is: (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Thus, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

In addition to the requirements of Rule 8(a), when a plaintiff alleges claims that are rooted in fraud, he or she must comply with the heightened pleading standard of Rule 9.

*Cafasso, U. S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011). This requires the plaintiff to set forth an explanation as to why the statement or omission complained of was false or misleading. *Id.*

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Iqbal*, 556 U.S. at 678. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

### III. DISCUSSION

Under the ASA, it is unlawful for any person engaging directly or indirectly in a transaction to buy or sell securities to:

> 1. Employ any device, scheme or artifice to defraud.
>
> 2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
> 3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

A.R.S. § 44-1991(A).[4] An individual plaintiff may bring a private right of action under § 1991(A). *See* A.R.S. § 44-1991(B). Defendants assert several arguments regarding each ASA claim in the TAC. The Court will review each in turn.

#### A. Judicial Notice

As an initial matter, Defendants request that the Court take judicial notice of several documents before considering the Motion. (Doc. 64) Specifically, Defendants ask that the Court take judicial notice of several financial disclosure documents referenced in the TAC, the press release referenced in the TAC, and the Bankruptcy Court order confirming Xhibit's Chapter 11 Plan. (Doc. 64) In response, Plaintiffs agree that the existence of the

---

[4] Unless indicated otherwise, all statutory references are to Title 44 of the Arizona Revised Statutes ("A.R.S.").

5

documents referenced in the TAC is not disputed, and the Court may take judicial notice of their existence. (Doc. 67 at 5) However, Plaintiffs argue that much of the information contained within the documents is disputed, and therefore, any disputed information must be construed in their favor. (Doc. 67 at 5-7) In addition, Plaintiffs argue that the Court should not take judicial notice of the documents that are not referenced in the TAC. (Doc. 67 at 6-7)

On a motion to dismiss, a court may take judicial notice of matters of public record—as long as the information is not subject to a reasonable dispute. Fed. R. Evid. 201. Alternatively, a district court may consider unchallenged documents necessarily relied upon in a complaint. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (explaining that a court may treat a document incorporated by reference into a complaint as true for purposes of a Rule 12(b)(6) motion).

Because Plaintiffs challenge some of the information contained in Defendants' proposed documents, the Court will not take judicial notice of the documents at this time. *See* Fed. R. Evid. 201 (stating that a judicially noticed fact is to be taken by a jury as conclusively true). However, because Plaintiffs do not challenge the validity of the documents referenced in the TAC, the Court will consider the documents for purposes of the Motion only. This includes Defendants' exhibits 1, 4, 7-9, 14, 15 and 18. (Doc. 64 at 2-3) *See Ritchie*, 342 F.3d at 908. The Court will not consider any of the other documents (exhibits 2, 3, 5, 6, 10-13, 16, and 17). (Doc. 64 at 2-3)

### B.    A.R.S. § 44-1991(A)(2)

Defendants argue that Plaintiffs fail to allege that each Defendant violated § 1991(A)(2). Section 1991(A)(2) prohibits any person from making untrue statements of material fact or omitting any material fact in a misleading way. "The requirement of materiality is satisfied by a showing of substantial likelihood that, under all the circumstances, the misstated or omitted fact would have assumed actual significance in the deliberations[] of a reasonable buyer.*" Hirsch v. Ariz. Corp. Comm'n*, 352 P.3d 925, 932-33 (Ariz. Ct. App. 2015) (internal quotation marks and citation omitted)). "Under this test,

there is no need to investigate whether an omission or misstatement was actually significant to a particular buyer." *Id.* at 933 (citation omitted). Furthermore, materiality is normally a question of fact for the jury. *See Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009), *aff'd by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). A complaint will be dismissed at the motion to dismiss stage only when the statements or omissions alleged in the complaint are so obviously important (or unimportant) to an investor that "reasonable minds cannot differ on the question of materiality." *Id.* (internal quotations and citations omitted).

First, Defendants assert that the press release cannot be considered a statement for § 1991(A)(2) purposes because it is protected by the safe harbor provision in § 2087. (Doc. 63 at 6) Section 2087(C)(1) states a person is not liable for an allegedly untrue statement of material fact or an omission of material fact made in a forward-looking statement if "[t]he forward-looking statement is identified as a forward-looking statement and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement."

Here, the Court finds that the press release included several "forward-looking statements" and is accompanied by the requisite cautionary language about the statements. (Doc. 64-7 at 267-70) Therefore, the Court finds that the press release cannot be a basis of liability under § 1991(A)(2).

However, the press release is not the only alleged untrue material statement or omission in support of Plaintiffs' claim. Plaintiffs allege that each Defendant, while acting as a director and/or a controlling person, took part in and approved several inaccurate SEC filings and financial statements during the alleged class period. (Doc. 62 at 18) Plaintiffs assert that the documents filed in May of 2013 through September of 2014 intentionally misconstrued both Xhibit and SkyMall's true financial status by disclosing inaccurate material information (such as Xhibit's net worth and the valuation of the merger) and omitting material information (such as the impairment charge and stock compensation expense). (Doc. 62 at 3-4, 9-12, 20) The Court finds that these financial documents are

sufficient "statements" to support liability under § 1991(A)(2). The Court further finds that the TAC provides sufficient specificity to put each Defendant on notice of their part in the alleged fraudulent scheme at issue in this case. Therefore, Plaintiffs' claim under § 1991(A)(2) will not be dismissed.

### C. A.R.S. § 44-1991(A)(3)

Section 1991(A)(3) prohibits any person from engaging in any transaction to buy or sell securities, which would operate as a fraud or deceit.

#### 1. Implausibility

Defendants argue that Plaintiffs' § 1991(A)(3) claim fails because the alleged facts are implausible. (Doc. 63 at 12) Specifically, Defendants assert that "[t]he theory that Najafi concocted the Merger to profit from his purchase of Xhibit shares would require the Court [to] assume that Najafi prophesized that the SEC would comment (months later) on the Merger valuation . . . and that nearly a year later the Merger would be revalued from the $0.5738 Initial Valuation up to a value of $4.00 per share." (Doc. 63 at 13) In response, Plaintiffs argue that the Ninth Circuit has already sustained it's § 1991(A)(3) claim, which forecloses Defendants' implausibility argument. (Doc. 68 at 3)

In its Mandate, the Ninth Circuit concluded that Plaintiffs' allegations of "the merger itself, termination of Xhibit's profitable business lines, delayed SEC filings, and undisclosed negotiations [to sell the loyalty business]" were sufficient to survive a motion to dismiss. (Doc. 50-1 at 2-3) Here, Plaintiffs include the same allegations in the TAC. Therefore, the Court finds that Plaintiffs have sufficiently pled a plausible theory of liability under § 1991(A)(3).

#### 2. Loss Causation

Defendants next argue that Plaintiffs fail to allege loss causation, which is a required element to recover rescissory damages under § 1991(A)(3). (Doc. 63 at 13) In response, Plaintiffs argue that they are equitably entitled to rescissory damages without the need to prove loss causation. (Doc. 68 at 11) Citing *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1209 (9th Cir. 2012), Plaintiffs argue that equitable considerations

determine whether they need to prove loss causation, and the facts of this case do not warrant a showing of loss causation. (Doc. 68 at 11) In the alternative, Plaintiffs argue that they have sufficiently pled loss causation. (Doc. 68 at 11-12)

In *Grand v. Nacchio*, 147 P.3d 763, 778-80 (Ariz. Ct. App. 2006), the Arizona Court of Appeals held that a plaintiff need not show loss causation for a rescission claim under § 1991(A)(3), but the court concluded that loss causation is a required element to prove a claim for rescissory damages under § 1991(A)(3). Subsequently, the court in *Strategic Diversity Inc.* stated in a footnote: "[w]ith respect to loss causation in a suit for rescissionary damages, Arizona law directs the court to consider 'equitable considerations' to determine whether loss causation is required." *Strategic Diversity Inc.*, 666 F.3d at 1209 n.2. Although the *Strategic Diversity Inc.* court made the comment in relation to claims under the ASA, the Court cited to the portion of the *Grand* decision that analyzed rescissory damages for common law fraud claims. *See Grand,* 147 P.3d at 27-28. Therefore, this Court does not find the statement persuasive or applicable to this case. It remains that loss causation is a required element under § 1991(A)(3) to prove rescissory damages, and equitable considerations do not provide any exception.

Here, Plaintiffs have requested relief via rescission and rescissory damages in the alternative. (Doc. 62 at 26) As to the rescission claim, loss causation is not required.[5] As to the rescissory damages claim, the Court finds that Plaintiffs have sufficiently pled loss causation. Plaintiffs claim that Defendants engaged in a scheme to mislead investors with respect to Xhibit and SkyMall's future growth. Plaintiffs assert that Defendants' misleading statements and omissions misconstrued Xhibit and SkyMall's true financial circumstances and future business prospects, resulting in Plaintiffs' purchase of the stock. (Doc. 62 at 2-3) The loss allegedly occurred because, even though Plaintiffs bought the stock below the proper $4.00 valuation, Plaintiffs purchased the stock with the expectation that it would grow into the future along with Xhibit and Skymall's business ventures.

---

[5] For the reasons stated below, the Court will dismiss Plaintiffs' request for rescission.

9

Instead, Plaintiffs claim that Defendants never intended for the merger to result in profitable business, and the stock was rendered worthless in the bankruptcy two years later. (Doc. 62 at 4, 16) In this way, the Court finds that Plaintiffs have adequately alleged loss causation.

**3. Rescission**

Defendants next argue that Plaintiffs' request for rescission based on § 1991(A)(3) fails because Plaintiffs cannot satisfy the "tender" requirement for recession. (Doc. 63 at 14) Defendants assert that the Xhibit stock was automatically cancelled as part of the bankruptcy plan and Plaintiffs no longer have any interest in the stock that can be tendered back to Defendants. (Doc. 63 at 14-15) In response, Plaintiffs argue that Xhibit's bankruptcy did not cancel their interest in the Xhibit stock, and it simply rendered their interest worthless. (Doc. 68 at 10) Plaintiffs further assert that the "futile act of tender" is not required for rescission when the security has become worthless, and alternatively, substitute tender is permissible under the ASA. (Doc. 68 at 10-11) Finally, Plaintiffs argue that the adequacy of tender is a question of fact for the jury. (Doc. 68 at 11)

The bankruptcy order confirming the Chapter 11 Plan states: "[o]n the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the Equity Interests shall be deemed automatically cancelled and shall be of no further force, whether surrendered for cancellation or otherwise." (Doc. 64-7 at 207)

The Court finds that the bankruptcy order effectively cancelled Xhibit's stock, and Plaintiffs therefore have no interest in any stocks to "tender" back to Defendants. (Doc. 64-7 at 207) Furthermore, the Court finds that Plaintiffs' argument regarding substitute tender is unpersuasive. Arizona courts allow substitute tender when the party seeking rescission offers stock from the same company that was purchased at a different time than the alleged fraudulent acts. *See Grand*, 147 P.3d at 22-23 (explaining that because stocks are fungible property, the court found no material difference between the shares that the plaintiff originally purchased and any shares it subsequently obtained to use as substitute tender).

However, Arizona courts have not applied substitute tender when the party seeking rescission cannot return the other party back to its status quo. *See Grand*, 147 P.3d at 23. For parties who no longer own the stock at issue and cannot obtain identical stock as substitute, § 2001(A) allows for the recovery of rescissory damages. Accordingly, Plaintiffs' request for rescission shall be dismissed with prejudice.

### D. A.R.S. § 44-2003

Defendants argue that Plaintiffs cannot plead sufficient facts to show that they "participated in or induced" an unlawful sale of securities. (Doc. 63 at 15) Defendants assert that Plaintiffs' obtained the stock through aftermarket purchases, and Plaintiffs cannot show that Defendants had any direct connection to those sales. (Doc. 63 at 15)

In response, Plaintiffs argue that participation and inducement may still be found when a plaintiff buys stock through a secondary market. (Doc. 68 at 13) Plaintiffs further assert that Defendants prepared misleading documents with the purpose of keeping Xhibit afloat until Defendant Najafi could sell his shares for a profit. (Doc. 68 at 15)

A plaintiff bringing an ASA claim under § 2003(A) is not required to have purchased the stock at issue directly from the defendant. *See In re Allstate Life Ins. Co. Litigation*, 971 F.Supp.2d 930, 942 (explaining that secondary market purchasers may bring ASA claims). However, the Plaintiff must allege facts showing that the defendant "participated in or induced" the allegedly unlawful sale. A.R.S. § 44-2003(A). "Participated in," for purposes of § 2003(A), means "to take part in something" or "have a part or share in something." *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 332-33 (Ariz. Ct. App. 1996). "Inducement" means to "persuade" and "prevail." *Id.*

In the TAC, Plaintiffs allege that each Defendant took part in intentionally preparing and disclosing false and misleading public documents filed with the SEC with the intent to persuade others to buy and sell Xhibit's stock. (Doc. 62 at 9-15, 18-19) Plaintiffs allege that Defendants did this with the intent to misconstrue Xhibit and SkyMall's true financial status and knowing that they had no intent on continuing Xhibit and Skymall's business ventures. (Doc. 62 at 9-15, 18-19) On its face, the Court finds that the allegations support

a claim of inducement, even though the Plaintiffs did not buy the stock directly from Defendants. *See Maverick Fund, L.D.C.*, 2018 WL 6181241 at *17 (finding that statements and omissions made on platforms designed to inform shareholders of the defendant's performance could be statements made to "maintain and encourage investment").

**E.     A.R.S. § 44-1999(B)**

Finally, Defendants argue that Plaintiffs cannot establish control person liability under § 1999(B) because Plaintiffs cannot establish that Xhibit committed an underlying violation of § 1991(A). (Doc. 63 at 17) In response, Plaintiffs argue that they have sufficiently alleged an underlying violation of § 1991(A) and each Defendant can be held liable as a control person under § 1999(B) because "there is no actual participation requirement for control-person lability under Arizona law." (Doc. 68 at 17)

Although Plaintiffs are correct in their assertion that § 1999(B) does not require actual participation, the Court finds that Plaintiffs cannot satisfy the statutory requirements of § 1999(B). Section 1999(B) states "[e]very person who, directly or indirectly, controls any person liable for a violation of § 44-1991 or 44-1992 is liable jointly and severally with and to the same extent as the controlled person." A prerequisite to findings Defendants' liable under § 1999(B) is first finding Xhibit liable under § 1991 or § 1992. Xhibit is not a party to this case, and Plaintiffs do not assert that Xhibit has ever been found liable under § 1991 or § 1992 in any other case. Therefore, Plaintiffs cannot satisfy the express terms of § 1999(B).

The Court finds that dismissal with prejudice is appropriate because it appears from the Chapter 11 Plan that Plaintiffs' have waived their right to sue Xhibit. (Doc. 64-7 at 216-19) Even if Plaintiffs could bring suit against Xhibit, this case has been ongoing for four years. Plaintiffs made the conscious decision not to add Xhibit as a defendant—even after amending the complaint three times. The Court finds that prejudice would result if Plaintiffs had the ability to add Xhibit's bankruptcy estate as a defendant at this point in the litigation. Accordingly, the Court will dismiss Plaintiffs' § 1999(B) claim with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's Request for Judicial Notice (Doc. 64) **denied**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss (Doc. 63) is **granted in part and denied in part** as follows:

    1. Plaintiffs' control person claim under A.R.S. § 44-1999(B) (Count Three) shall be dismissed with prejudice;

    2. Plaintiffs' request for relief in the form of rescission shall be dismissed with prejudice; and

    3. All other claims remain.

**IT IS FURTHER ORDERED** that the Clerk's Office shall enter judgment accordingly.

Dated this 24th day of March, 2020.

                                        Honorable Steven P. Logan
                                        United States District Judge